UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGIA G. BARNHART, | ) | Case No. 5:19-cv-01236 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Georgia Barnhart applied for social security disability insurance. The Commissioner denied her application, both initially and after reconsideration. Plaintiff requested a hearing, after which the administrative law judge also denied her application. On review, this Court vacated the judgement and remanded the case to the Commissioner. After a second hearing, the administrative law judge again denied Plaintiff's application. Plaintiff again sought review in federal court. The Magistrate Judge recommends affirming the Commissioner's decision, and Plaintiff objects to that recommendation. For the reasons that follow, the Court **OVERRULES** Plaintiffs objections (ECF No. 24), **ADOPTS** the Report and Recommendation (ECF No. 23), and **AFFIRMS** the Commissioner's denial of Plaintiff's application for social security disability insurance benefits.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, Ms. Barnhart applied for disability benefits, alleging an onset date of April 26, 2012. (ECF No. 18, Page ID #334.) Ms. Barnhart alleged disability due to several conditions, including Type I diabetes, migraines, neuropathy, legal blindness, depression, and fibromyalgia. (*Id.*, Page ID #373 & #409.) The Commissioner denied her application initially and on reconsideration. (*Id.*, PageID #245 & 252.) Ms. Barnhart then requested a hearing before an administrative law judge, who also denied her application. (*Id.*, Page ID #107.) Ms. Barnhart filed an appeal to federal court, resulting in a remand to the Commissioner. (*Id.*, PageID #1598–1602.) In accordance with the remand, the ALJ conducted a second hearing. (*Id.*, Page ID #1625.) The ALJ again denied her application. (*Id.*, Page ID #1600.)

A. **Ms. Barnhart's Testimony**

At the first hearing, Ms. Barnhart testified that her employer terminated her employment for absenteeism. (*Id.*, Page ID #1725–26.) Ms. Barnhart testified her joint pain, hearing loss, and inability to drive since losing her license in August of 2012 prevented her from working. (*Id.*, Page ID #1723–27.) Further, her fibromyalgia, diabetes and hypoglycemia unawareness caused her to pass out frequently; she had frequent migraines; hearing loss requiring her to wear hearing aids full time; rectal bleeding requiring her to be near bathrooms; and frozen shoulder made her circumstances more difficult. (*Id.*, Page ID #1728–31.) Consequently, Ms. Barnhart could not cook and required assistance with taking prescribed medicines, she could walk up to twenty-five minutes at a time, could not sit for long

periods, and could not use televisions or computers because she could not see them. (*Id.*, Page ID #1742–44.)

At the second hearing, Ms. Barnhart testified that she regained her driver's license in March 2017. (*Id.*, Page ID #1635.) Ms. Barnhart drove occasionally during daylight hours and drove herself to the hearing unaccompanied. (*Id.*) Ms. Barnhart did have to leave far in advance to account for stopping when her blood sugar dropped. (*Id.*, Page ID #1635–36.) Further, Ms. Barnhart testified she frequently rescheduled appointments because of the unreliability of her health, frequently fell ill because of her diabetes and immune system, and had chronic migraines and chronic pain stemming from her fibromyalgia. (*Id.*, Page ID #1637–38.)

### B. Administrative Law Judge's Decision

After taking testimony and considering the record, the administrative law judge issued a written decision denying Ms. Barnhart's application. (*Id.*, PageID #1603–13.) The ALJ conducted the customary five-step inquiry to determine whether Ms. Barnhart was disabled under Section 1614(a)(3)(A) of the Social Security Act. (*Id.*, PageID #1604.)

At step one, the ALJ found Ms. Barnhart "had not engaged in substantial gainful activity from her alleged disability onset date of April 26, 2012." (*Id.*, PageID #1605.) At step two, the ALJ determined Ms. Barnhart had the following severe impairments: "degenerative disc disease ("DDD"), osteoarthritis—bilateral knees, fibromyalgia, diabetes mellitus with neuropathy, tendinitis—bilateral shoulders, migraines, headaches, some decrease in visual acuity and hearing loss." (*Id.*, PageID

3

#1605.) Though the ALJ provided for some decrease in visual acuity, the ALJ also found that Ms. Barnhart's vision loss was not as extensive as she alleged and caused few limitations on her ability to perform work-related activities. (*Id.*, PageID #1606–07.) At step three, the ALJ found that Ms. Barnhart did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app. 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). (*Id.*, PageID #1608.)

As to step four, the ALJ found that Ms. Barnhart had the residual functional capacity to perform light work, with some limitations:

> The claimant can frequently reach in all directions, including overhead, with the left and right upper extremities. She can handle and finger items frequently with both hands. The claimant can frequently climb ramps and stairs, but she can only occasionally climb ladders, ropes, or scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant is able to avoid ordinary hazards in the workplace—such as boxes on the floor and doors ajar. However, she can never work at unprotected heights or around moving mechanical parts. She can never operate a motor vehicle and can only work around moderate noise.

(*Id.*, Page ID #1609.)

Finally, at step five, the ALJ determined that Ms. Barnhart could not perform any past relevant work. (*Id.*, Page ID #1611.) However, the ALJ determined that Ms. Barnhart can perform other jobs that exist in significant numbers in the national economy given her age, education, work experience, and residual functional capacity. (*Id.*, PageID #1612–13.) Therefore, the ALJ found that Ms. Barnhart was not disabled and denied her application. (*Id.*, PageID #1613.) The Appeals Council

4

declined further review, rendering the ALJ's decision final on March 26, 2019. (*Id.*, PageID #1590.)

### B.1. Visual Impairment

According to the ALJ's determination, one of Ms. Barnhart's severe impairments was "some decrease in visual acuity." (*Id.*, PageID #1605.) However, the ALJ determined that the vision loss, as alleged by Ms. Barnhart, caused few limitations on her ability to perform work-related activities. (*Id.*, PageID #1606.)

The ALJ extensively examined the evidence in the record as it related to Ms. Barnhart's claimed vision loss. (*Id.*, PageID #1606–07.) He noted that while visual acuity tests appeared to corroborate Ms. Barnhart's complaints, no test has been able to explain the cause of the alleged vision loss. (*Id.*, PageID #1606.) While Ms. Barnhart claimed the cause was diabetic retinopathy, several examining ophthalmologists expressly disclaimed that case. (*Id.*)

Further, the ALJ found the tests showing the alleged vision loss conflicted with Ms. Barnhart's observed and reported physical activities. (*Id.*) For instance, the ALJ pointed to a consultative examination during which Ms. Barnhart appeared to have severe vision loss during the test, but had no difficulty grabbing and handling objects. (*Id.*) Ms. Barnhart testified that she drove to the hearing and had restored her driver's license in March 2017. (*Id.*, PageID #1607.) The ALJ found it "implausible to believe that the claimant can barely identify shapes in front of her but remains able to drive a vehicle." (*Id.*) Overall, the ALJ found Ms. Barnhart's range of daily activity, lack of a diagnosed visual impairment, and normal ocular examinations

suggested that her vision loss was not as extensive as she suggested. (*Id.*) Accordingly, the ALJ found that Ms. Barnhart's vision problems were not disabling. (*Id.*)

As to the two medical opinions by Dr. Bucher and Dr. Zewail that corroborated Ms. Barnhart's severe vision loss, the ALJ gave them little weight. Dr. Bucher conducted a visual test on Ms. Barnhart and opined that Ms. Barnhart had severe visual limitations. (*Id.*) The ALJ gave Dr. Bucher's opinion little weight because it was inconsistent with the other medical evidence and inconsistent with Ms. Barnhart's range of daily activity. (*Id.*) The ALJ gave little weight to Dr. Zewail's opinion because Dr. Zewail did not administer any vision testing; further, his opinion was inconsistent with medical evidence and Ms. Barnhart's daily activity. (*Id.*)

### B.2. Fibromyalgia

In step three, addressing whether any of Ms. Barnhart's impairments met or medically equaled the severity of one of the listed impairments, the ALJ specifically considered Ms. Barnhart's fibromyalgia. (*Id.*, PageID #1609.) The ALJ considered the effect fibromyalgia would have on her ability to perform work related tasks. (*Id.*) He also considered how her fibromyalgia might cause long-term complications that would affect her ability to function. (*Id.*) Based on the "mostly unremarkable" physical examinations in the record, the ALJ determined that Ms. Barnhart's fibromyalgia, either singularly or in combination with her other medically determinable severe impairments, did not result in limitations greater than those already assessed. (*Id.*)

6

In step four, the ALJ again addressed Ms. Barnhart's fibromyalgia. (*Id.*, PageID #1611.) Aside from one medical finding of positive trigger points, the ALJ determined that the objective medical evidence related to Ms. Barnhart's other impairments. (*Id.*) Nonetheless, pursuant to Social Security Ruling 12-2p, the ALJ considered other symptoms often found in fibromyalgia patients, including fatigue, irritable bowel syndrome, cognitive limitations, depression, and anxiety. (*Id.*) The ALJ determined that there was no objective evidence of fatigue, irritable bowel syndrome, or cognitive impairment. (*Id.*) Further, he determined Ms. Barnhart's mental impairments were not severe. (*Id.*, PageID #1607–08 & 1611.)

**C.     Report and Recommendation**

Ms. Barnhart timely filed this action on May 30, 2019, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Magistrate Judge issued a report and recommendation that the Court affirm the ALJ's decision denying Ms. Barnhart's application. (ECF No. 23.) Plaintiff made two arguments on appeal: (1) the ALJ's decision was internally inconsistent regarding Plaintiff's visual impairment; and (2) the ALJ's evaluation of Ms. Barnhart's fibromyalgia was legally insufficient. (ECF No. 19, PageID #2377.)

**C.1.    Visual Impairment**

On appeal to federal court, the Magistrate Judge determined that the ALJ's consideration of Ms. Barnhart's visual impairment was proper. (ECF No. 23, PageID #2446.) The Magistrate Judge considered the alleged internal inconsistencies: that the ALJ found a "decrease in visual acuity" to be a severe impairment but also found

that the vision loss Ms. Barnhart alleged caused few limitations and was, therefore, not severe and not disabling. (*Id.*, PageID #2447.) The Magistrate Judge determined that the statements were not inconsistent; rather, the ALJ's decision made clear that while the record did not support Ms. Barnhart's claim of legal blindness, the record did support some decrease in Ms. Barnhart's visual acuity. (*Id.*)

In making this determination, the Magistrate Judge reviewed the record evidence on which the ALJ relied, including medical opinion evidence, eye examinations, objective observations examiners made, Ms. Barnhart's subjective statements about her vision, and Ms. Barnhart's reported daily activities. (*Id.*, PageID #2447–48.) The Magistrate Judge concluded that the ALJ provided a thorough explanation for his findings regarding Ms. Barnhart's alleged visual impairment and that Plaintiff has not shown that the findings were unsupported by substantial evidence. (*Id.*, PageID #2449.)

### C.2. Fibromyalgia

The Magistrate Judge determined that the ALJ sufficiently addressed Ms. Barnhart's fibromyalgia. (*Id.*, Page ID #2450.) Plaintiff raised two arguments regarding the ALJ's treatment of her fibromyalgia. First, Plaintiff argued that the ALJ's decision was internally inconsistent because the ALJ found that fibromyalgia was a severe impairment but implied that the limitations in the residual functional capacity related to other physical impairments only. (*Id.*) Second, Plaintiff argued that the ALJ's decision was legally insufficient because the ALJ appeared to discount the severity of the fibromyalgia symptoms. (*Id.*, PageID #2450.)

As an initial matter, the Magistrate Judge noted that a diagnosis of fibromyalgia does not entitle a claimant to a finding of disability. (*Id.*, PageID #2451.) Further, the Magistrate Judge found that the ALJ neither ignored Ms. Barnhart's fibromyalgia nor failed to explain his reasons for finding that it was not disabling and did not require greater limitations than those contained in the residual functional capacity. (*Id.*) Rather, the ALJ considered Ms. Barnhart's allegations about her impairments, including fibromyalgia, but determined that the intensity, persistence, and limited effects of the alleged symptoms were not consistent with the record. (*Id.*, PageID #2452.) In reaching this determination, the ALJ considered medical evidence, Ms. Barnhart's daily activities, and Ms. Barnhart's testimony. (*Id.*) On the basis of this record, the Magistrate Judge determined that the ALJ did not err in his evaluation of Ms. Barnhart's fibromyalgia and that substantial evidence supported the ALJ's assessment of Ms. Barnhart's residual functional capacity. (*Id.*, PageID #2452–53.) Accordingly, the Magistrate Judge recommended that the Court not remand for further proceedings regarding Ms. Barnhart's fibromyalgia. (*Id.*, PageID #2453.)

### D. Plaintiff's Objections

Plaintiff timely objected to the Magistrate Judge's Report and Recommendation. (ECF No. 24.) In her objections, Plaintiff reiterates arguments raised in her brief on the merits. (ECF No. 24, PageID #2455.) First, Plaintiff objects that the ALJ's decision is internally inconsistent regarding both Ms. Barnhart's visual impairments and her fibromyalgia. (*Id.*, PageID #2455–56.) Second, Plaintiff

objects that the ALJ erroneously discounted Ms. Barnhart's fibromyalgia. (*Id.*, PageID #2456–57.)

## ANALYSIS

The Court reviews de novo the portions of a magistrate judge's report and recommendation to which specific objections are made. 28 U.S.C. §636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation." *Scott v. Saul*, No. 1:19-cv-2393, 2021 U.S. Dist. LEXIS 92052, at *12-13 (N.D. Ohio May 14, 2021); *see* 28 U.S.C. 636(b).

Where a party objects, review is limited to determining whether substantial evidence in the record supports the Commissioner's decision to reviewing any legal errors. *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

## I. Visual Impairment

Plaintiff objects that the ALJ's decision regarding Ms. Barnhart's visual impairment is internally inconsistent. Briefly, the alleged inconsistency is that the ALJ found her "decrease in visual acuity to be a severe impairment" but also found Ms. Barnhart's alleged vision loss to cause few work-related limitations. (ECF No. 18, PageID #1605–07; ECF No. 23, PageID #2446–50; ECF No. 24, PageID #2455.) In her objection, Plaintiff contends that the Magistrate Judge failed to address the "explicit" inconsistency she raised. (ECF No. 24, PageID #2455.)

However, the Magistrate Judge directly and thoroughly addressed the alleged inconsistency Plaintiff raised. The Magistrate Judge identified the allegedly inconsistent statements to which Plaintiff now points and concluded that the statements were not inconsistent. (ECF No. 23, PageID #2447.) On de novo review based on Plaintiff's objection, the Court agrees. The sources of evidence on which the ALJ relied included medical opinion evidence, objective observations, Ms. Barnhart's subjective statements, and Ms. Barnhart's reported daily activities. Also, after thorough analysis, the ALJ explained that Ms. Barnhart had a severe impairment of some decrease in visual acuity. Although the ALJ concluded that Ms. Barnhart's visual impairment was not disabling, he provided for minor limitations to account for the vision impairment that he found supported by the record.

A "non-specific objection, or one that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge and results in duplication of effort on the part of the district court." *Joseph v.*

*Berryhill*, No. 3:16-cv-02259, 2017 WL 3736787, at *9 (N.D. Ohio Aug. 30, 2017). Here, Plaintiff reiterates her argument that the ALJ's treatment of Ms. Barnhart's visual impairment was internally inconsistent and fails to allege a specific objection to the Magistrate Judge's analysis. In any event, on the merits, the Court agrees that substantial evidence supports the ALJ's finding regarding Ms. Barnhart's visual impairment.

## II.     Fibromyalgia

Plaintiff also objects that the ALJ's analysis of Ms. Barnhart's fibromyalgia is internally inconsistent. (ECF No. 24, PageID #2455.) Plaintiff points to how the ALJ found that fibromyalgia is a "severe impairment" yet also found that Ms. Barnhart's physical limitations related solely to other conditions and that Ms. Barnhart had no other symptoms of fibromyalgia. (ECF No. 18, PageID #1605, 1609–11; ECF No. 23, PageID #2450; ECF No. 24, PageID #2455–56.) Relatedly, Plaintiff objects that the ALJ erred by failing to assess any limitations specific to Ms. Barnhart's fibromyalgia. (ECF No. 24, PageID #2456.) She argues that the ALJ improperly discounted the fibromyalgia solely because of a lack of diagnostic findings. (*Id.*)

As with the alleged inconsistency as to visual impairment, the Magistrate Judge directly and thoroughly addressed the alleged inconsistency as to fibromyalgia. (ECF No. 23, PageID #2451.) As an initial matter, the Magistrate Judge noted that a diagnosis of fibromyalgia, on its own, does not entitle a claimant to a finding of disability. (*Id.*) The Magistrate Judge determined that the ALJ considered Ms. Barnhart's fibromyalgia in determining the limitations contained in the residual

12

functional capacity, looking to Ms. Barnhart's subjective allegations as well as the evidence of record. (*Id.*, PageID #2451–52.) The Magistrate Judge explained that the ALJ found fibromyalgia to be a severe impairment at step two of the analysis, proceeded with the next steps of the analysis, and determined a residual functional capacity limiting Ms. Barnhart to light work with some limitations. (*Id.*, PageID #2453.)

Turning to Plaintiff's contention regarding limitations arising from fibromyalgia, as the Magistrate Judge noted, the ALJ did consider Ms. Barnhart's allegations that her fibromyalgia caused physical limitations. (ECF No. 18, PageID #1609 & 1611; ECF No. 23, PageID #2451–52.) However, the ALJ concluded that the intensity, persistence, and limiting effects of the symptoms that Ms. Barnhart reported were not consistent with the evidence in the record. (ECF No. 18, PageID #1610.) In reaching this conclusion, the ALJ considered medical evidence as well as evidence about Ms. Barnhart's daily activities and the medicine she used to manage pain. (ECF No. 18, PageID #1606–11.)

On review, the Magistrate Judge determined that the ALJ accounted for fibromyalgia related symptoms, including pain, in determining Ms. Barnhart's residual functional capacity. (ECF No. 23, PageID #2452.) Accordingly, the Magistrate Judge concluded that substantial evidence supported the ALJ's determination of residual functional capacity, and that the evidence did not require greater limitations due to fibromyalgia. (*Id.*, PageID #2452–53.)

In her objections, Plaintiff reiterates the arguments she raised in her brief on the merits as to the ALJ's consideration of her fibromyalgia but does not raise specific objections to the Magistrate Judge's analysis. After reviewing the ALJ's discussion of Ms. Barnhart's fibromyalgia and the related medical evidence and testimony, the Court agrees that the ALJ sufficiently addressed Ms. Barnhart's fibromyalgia and that substantial evidence supports his determination of Ms. Barnhart's residual functional capacity.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections ([ECF No. 24](#)), **ADOPTS** the Report and Recommendation ([ECF No. 23](#)), and **AFFIRMS** the Commissioner's denial of social security disability insurance. Further, the Court **DIRECTS** the Clerk to enter judgement accordingly.

**SO ORDERED**.

Dated: January 31, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio